The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in its discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over this claim. At all relevant times herein, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Firemans Fund Insurance Company was the carrier on risk.
4. Plaintiffs average weekly wage was $713.15 per week, yielding a compensation rate of $475.46 per week.
5. The date of plaintiffs admittedly compensable injury by accident was December 7, 1996.
6. The issues to be determined are as follows:
 a. Whether plaintiff is entitled to any additional workers compensation benefits?
 b. Whether Dr. Stephen Allen Grubb should be approved as plaintiffs treating physician?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 55 year-old married man with a high school education and no special training or skills.
2. From 1967 through April 28, 1998 plaintiff worked for defendant-employer and its predecessors as a petroleum tanker truck driver with the normal and usual duties of sitting while operating the tanker tractor and the frequent lifting and carrying of gasoline hoses weighing up to 100 pounds.
3. Plaintiff was in good health until December 7, 1996 when he injured his lower back while trying to pull an obstructed underground gasoline storage tank coupling. His injury was to his lumbar intervertebral discs located at levels L2-3, L3-4, and L4-5. Plaintiffs injury resulted in a ruptured disc at the L4-5 level with compression of the right L5 nerve root, causing right leg pain and weakness.
4. Plaintiff was totally disabled starting December 7, 1996 and continuing until July 1, 1997, when he returned to his pre-injury duties for defendant-employer.
5. From December 7, 1996, through March 25, 1997, conservative medical care consisting of physical therapy, medication, and rest failed to improve plaintiffs disabling lower back and right leg pain. Defendants referred plaintiff to Dr. Charles Rawlings, a neurosurgeon, for treatment.
6. On March 27, 1997 Dr. Rawlings operated on plaintiffs lower back to repair a ruptured disc at L4-5 and to decompress the L5 nerve root.
7. In June 1997 the defendant-employer contacted plaintiff about returning to work. Plaintiff requested "light duty work, but the employer informed him it had no light duty work. The employer offered plaintiff the opportunity to return to his pre-injury duties as a tanker truck driver, which plaintiff did on July 1, 1997.
8. In September 1997 plaintiff returned to see Dr. Rawlings, and complained of continued lower back pain. Dr. Rawlings suggested that plaintiff change jobs to a less physically-demanding job. Plaintiff responded that the employer had no light-duty work for him to perform. Dr. Rawlings and plaintiff agreed that he would continue working in his normal job until his back pain became unbearable.
9. In December 1997 plaintiff again contacted Dr. Rawlings complaining of severe lower back pain.
10. In early January 1998 plaintiffs back pain increased and Eddie McDowell, a physicians assistant, limited plaintiff to no lifting greater than 40 pounds, no sitting longer than an hour at a time, and no bending at the waist. In late January 1998 plaintiff returned to work at defendant-employer at his regular job duties because the employer had no light-duty work for him to perform.
11. By April 28, 1998 plaintiff had a change of condition for the worse when his lower back and right leg pain became so severe he became unable to work.
12. On or about April 28, 1998, defendants resumed paying plaintiff temporary total disability compensation benefits at the rate of $475.46 per week as a result of his disability.
13. On May 18, 1998, plaintiff returned to Dr. Rawlings. Dr. Rawlings prescribed more physical therapy and/or epidural steroid injections to help relieve plaintiffs severe lower back and leg pain.
14. Plaintiff then contacted physicians assistant Eddie McDowell, who referred him to Dr. Stephen Grubb, an orthopedic surgeon, for another opinion.
15. On June 2, 1998 Dr. Grubb evaluated plaintiff and advised physical therapy.
16. On June 12, 1998 plaintiff made a motion seeking the Industrial Commissions approval of Dr. Grubb as his treating physician.
17. Plaintiff returned to Dr. Grubb and was advised diagnostic testing was needed to determine the exact etiology of plaintiffs pain. Thereafter Dr. Grubb advised plaintiff that he had significant disc abnormalities at the L2-3, L3-4, and L4-5 levels secondary to plaintiffs original injury of December 7, 1996. Dr. Grubb advised plaintiff that he needed an L2 to L5 decompression, stabilization, and fusion operation to relieve his pain.
18. On September 16, 1998 plaintiff returned to Dr. Grubb and discussed the proposed surgery. Plaintiff agreed to undergo the surgery, which was then scheduled for November 12, 1998. The surgery was canceled because defendants refused to pay for the surgery.
19. Immediately prior to the scheduled surgery, in September 1998 defendant-employer created a new position, "assistant to safety coordinator, that was then offered to plaintiff. This position involved auditing driver logbooks and required mostly sitting. The employer agreed to allow plaintiff to stand or walk around for a few minutes every hour. Plaintiff refused to accept this position because he felt he was unable to sit long enough to perform the duties due to his severe back pain. The Full Commission declines to reverse the Deputy Commissioners determination that plaintiffs complaints of pain were credible.
20. The position as created by defendant-employer for plaintiff was not suitable to plaintiffs capacities in that plaintiffs back pain and leg pain precluded him from being able to perform the offered position. Plaintiffs refusal to accept the position as offered by defendant-employer was justified.
21. Defendants thereafter sent plaintiff to Dr. Alfred L. Rhyne for an independent opinion as to whether plaintiff needed the surgery Dr. Grubb recommended. Dr. Rhyne indicated that the surgery would most likely relieve plaintiffs pain in his lower back for some period of time. Dr. Rhyne indicated that he would not perform the surgery, but it was for plaintiff and his treating doctor to decide what course of treatment plaintiff should follow.
22. Dr. Rhyne was of the opinion that plaintiff was suffering significant problems as a result of his compensable injury and that he was in need of treatment. Dr. Rhyne also indicated that there is disagreement among doctors as to how to treat individuals who have the problem plaintiff is experiencing.
23. As a direct result of his December 7, 1996 compensable injury, plaintiff suffered a substantial change of condition that rendered him totally disabled by April 28, 1998. He has attempted to return to work but has not been successful because of the physical difficulties he experiences as a result of his compensable injury.
24. Plaintiff has not reached maximum medical improvement.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On December 7, 1996, plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of his employment by defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of his injury by accident plaintiff was totally disabled from December 7, 1996 through June 30, 1997 and is entitled to benefits at the rate of $475.46 per week during that period. N.C. Gen. Stat. 97-29.
3. In January 1998 plaintiff again became totally disabled due to his original injury by accident. N.C. Gen. Stat. 97-29.
4. By April 28, 1998 plaintiff sustained a change of condition for the worse in that he had a return of severe lower back and right leg pain. As a result of his worsened condition, plaintiff was unable to continue working and was disabled due to his original injury by accident. N.C. Gen. Stat. 97-47; 97-29.
5. Starting April 28, 1998, and continuing, plaintiff was entitled to ongoing temporary total disability compensation benefits at the rate of $475.46 per week. N.C. Gen. Stat. 97-29.
6. The "assistant to safety coordinator position created by defendant-employer and offered to plaintiff in September 1998 was not suitable to plaintiffs physical capacities. Plaintiffs refusal to accept the position as offered by defendant-employer was justified. N.C. Gen. Stat. 97-32.
7. Plaintiff is entitled to have defendants pay all medical and related expenses incurred as a result of plaintiffs injury by accident. This treatment specifically includes that recommended by Dr. Stephen Grubb, who is approved as plaintiffs treating physician. N.C. Gen. Stat. 97-25.
8. Defendants are entitled to a credit for all disability benefits paid to plaintiff since December 7, 1996. N.C. Gen. Stat. 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorneys fees hereinafter approved, defendants shall pay temporary total disability benefits to plaintiff at the compensation rate of $475.46 per week from April 28, 1997 and continuing until further order of the Industrial Commission.
2. Defendants shall pay for all medical treatment expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiffs period of disability. This treatment includes, but is not limited to, procedures recommended by Dr. Stephen Allen Grubb who is hereby APPROVED as plaintiffs treating physician.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the award is approved for plaintiffs counsel. The attorneys fees shall be deducted from the compensation awarded to plaintiff and paid directly to plaintiffs counsel. Defendants shall pay every fourth payment due plaintiff directly to plaintiffs counsel as a reasonable attorney fee.
4. Defendants shall pay the costs of this appeal.
This is the ___ day of August, 2000
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/______________ RENE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER